1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11  ALBERTO VILLESCAS,                    )  Case No.: 1:12-cv-02068-LJO-SAB (PC)
                                          )
12                   Plaintiff,           )  ORDER REQUIRING PLAINTIFF TO EITHER
                                          )  FILE AMENDED COMPLAINT OR NOTIFY
13          v.                            )  COURT OF WILLINGNESS TO PROCEED ONLY
                                          )  ON CLAIMS IDENTIFIED AS COGNIZABLE
14  M.T. DOTSON, et al.,                  )
                                          )  [ECF No. 1]
15                   Defendants.          )
                                          )  THIRTY-DAY DEADLINE
16  _____      )

17          Plaintiff Alberto Villescas is appearing pro se and in forma pauperis in this civil rights action

18  pursuant to 42 U.S.C. § 1983.  Plaintiff filed the instant complaint on December 21, 2012.

19                                        **I.**

20                          **SCREENING REQUIREMENT**

21          The Court is required to screen complaints brought by prisoners seeking relief against a

22  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

23  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

24  "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

25  monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

26          A complaint must contain "a short and plain statement of the claim showing that the pleader is

27  entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

28  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

                                          1

do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).   The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

Plaintiff is a disabled inmate confined at the California Department of Corrections and Rehabilitation.  His disabilities consist of but are not limited to: (1) paraplegia; (2) hearing impairment; and (3) medical illness.  Plaintiff's condition requires continuous medical treatment and accommodations consisting of but not limited to: (1) hearing aids; (2) braces; (3) cotton bedding; (4) dressing/catheter/colostomy supplies; (5) egg-crate mattress; (6) wheelchair; (7) cane; (8) orthopedic shoes; (9) hearing and mobility vest; and (10) housing restrictions (i.e., ground floor, lower tier/bottom bunk, no stairs in path of travel, no triple bunks and wheelchair accessible cell).

Because of Plaintiff's medical condition, he is required to ingest powerful prescription medications (e.g. methadone).

Plaintiff filed numerous grievances alleging that prison officials were deliberately indifferent to his medical needs by, but not limited to provide/re-fill his prescription medications, reducing his medications despite his obvious need for equal or stronger dosages, and failing to bring the so-called "conversion cells" up to code set forth in the Americans with Disabilities Act (ADA).

1       Plaintiff continuously submitted Health Care Services Request Forms (hereinafter "CDC

2 7362s" forms), requesting to be seen by a doctor because of the painful symptoms he was

3 experiencing.

4       Prison officials including the named defendants became irate at Plaintiff's continuous appeals

5 and requests for medical care.  They developed a hostile and sinister attitude toward Plaintiff.

6       Plaintiff's wheelchair tires had worn down exposing the inner tubes.  He was unable to roll or

7 maneuver himself as a result.  Plaintiff complained for weeks to no avail.

8       When a facility licensed vocational nurse (hereinafter LVN) attempted to assist Plaintiff by

9 phoning an ADA coordinator, Defendant Hernandez deliberately intervened and prevented him from

10 receiving any tires by instructing the assisting LVN not to contact the ADA coordinator.  As a result,

11 Plaintiff was forced to roll himself on flat tires which caused him to cut and scrape the palms of his

12 hands, as well as caused further damage to his rims and tires.

13       When Plaintiff asked Hernandez why she prevented the assisting LVN from contacting the

14 ADA coordinator, she falsely accused him of threatening her.  As a direct result of Hernandez's

15 deliberate false allegations, Plaintiff was placed in administrative segregation.  Plaintiff was housed in

16 an administrative segregation cell which did not accommodate his paraplegia condition, and he was

17 denied all medications.

18       Upon Plaintiff's release from administrative segregation, he was re-housed in another so-called

19 conversion cell.  The converted cell did not meet the design guide standards of the ADA.  These cells

20 were the direct cause of the injuries Plaintiff sustained by, but not limited to: (1) improper door width

21 (Plaintiff scraped and injured his hands against the door frame forcing himself in-and-out of the cell;

22 (2) bunk design (the bunks are less than six-feet long and Plaintiff is six-feet, two and one-half inches

23 tall causing him to constantly injure his head on the wall and metal locker); and (3) space (Plaintiff

24 cannot maneuver while in his wheelchair).

25       The converted cell did not contain a desk, and the sink design made getting water or simply

26 washing Plaintiff's face extremely difficult.

27       On October 8, 2011, Plaintiff appeared before Senior Hearing Officer (SHO), to answer the

28 Rules Violation Report (RVR), issued by Defendant Hernandez.

1    Defendant Dotson acted as the SHO.  Dotson made it abundantly clear that Plaintiff will not

2    have an impartial decision-maker at his hearing.  Dotson informed Plaintiff that he intended on finding

3    him guilty of all charges because he had found him not guilty on a previous unrelated charge, and

4    because Plaintiff "likes to file paperwork [grievances]."

5    Dotson deliberately refused to call any of Plaintiff's requested prisoner-witnesses, and falsely

6    noted in the RVR that Plaintiff did not request any witnesses.

7    Dotson assessed a credit forfeiture of 30 days and 60 days loss of dayroom, phone, and

8    package privileges.

9    On November 2, 2011, Defendant Madrigal falsely accused Plaintiff of hoarding his morning

10   medication as an act of reprisal for filing a staff complaint against Hernandez, who is a friend of

11   Madrigal.  Madrigal then drafted a false RVR against Plaintiff.

12   Dotson again acted as the SHO, and informed Plaintiff at the beginning that he will not be

13   provided an impartial decision-maker, and that he will be found guilty.  Dotson warned Plaintiff that if

14   he continues to file grievances, he is going to end up being housed in the Security Housing Unit

15   (SHU).

16   Dotson refused to allow Plaintiff to ask relevant questions pursuant to the California Code of

17   Regulations, found Plaintiff guilty, and assessed additional credit/privilege losses.  Dotson also

18   referred Plaintiff to the Unit Classification Committee (UCC), for Work Group/Privilege and/or SHU

19   placement.

20   Despite the "chilling effect" implemented by the named-defendants, Plaintiff continued to

21   grieve the issue of being housed in converted cells there were substandard which directly caused

22   serious injuries and/or exacerbated his pre-existing injuries.

23   On April 3, 2012, Defendant Tucker became irate because an ADA coordinator (Ms. Brown),

24   supervised Plaintiff as he made repairs to his wheelchair using tools specifically designated for that

25   purpose.  Tucker threatened both the ADA coordinator and Plaintiff.

26   On June 12, 2012, Tucker attempted to prevent Plaintiff from going to canteen by informing

27   him that he will not be allowed to wait on the ADA wheelchair accessibility pad.  Plaintiff informed

28   Tucker that other wheelchair-bound prisoners were allowed to wait on the medical pad for their

4

canteen since canteen was not specifically delivered to anyone except ad-seg prisoners, and because there was no place for mobility impaired prisoners to wait for their canteen.

## IV.

## DISCUSSION

### A.      Deliberate Indifference to Serious Harm

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that he was placed in a converted cell that did not meet his needs under the ADA, and he suffered injuries as a result.  Plaintiff's alleges that Defendant, D. Fischer, an ADA Appeals Coordinator employed with CDCR, and Does 1 through 50, violated Plaintiff's constitutional rights by asserting the converted cells and modifications were construed per approved specified

1    architectural plans.  Plaintiff alleges that Defendant D. Fisher "signed-off on Plaintiff's appeals

2    without any serious considerations with respect to the serious injuries he was being subjected to" as a

3    result of the inadequate cell conditions is sufficient, at the screening stage, to state a cognizable claim

4    for deliberate indifference.  However, Plaintiff has not alleged any affirmative action on the part of

5    any of the "Doe" defendants.  If Plaintiff can only list certain defendants as Doe, he must allege

6    specific acts that each Doe defendant did, such as "John Doe did X" and "John Doe 2 and 3 did Y."

7    Alexander v. Tilton, 2009 WL 464486, *5 (E. D. Cal. Feb. 24, 2009).  Plaintiff will be given the

8    opportunity to amend.

9            **B.        Americans with Disabilities Act**

10           It is not made clear by Plaintiff's complaint whether he is attempting to raise a separate ADA

11   claim or is simply alleging facts with respect to his alleged disability in support of his Eighth

12   Amendment claim in connection to his placement in the converted cell.  If Plaintiff is attempting to

13   allege a separate cause of action under the ADA, he is advised of the following applicable legal

14   standards.

15           Title II of the ADA provides that "no qualified individual with a disability shall, by reason of

16   such disability, be excluded from participation in or be denied the benefits of the services, programs,

17   or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.

18   Title II applies to the services, programs, and activities provided for inmates by jails and prisons.

19   Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 208-13, 118 S.Ct. 1952 (1998); Simmons

20   v. Navajo County, 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. County of Orange, 526 F.3d

21   1190, 1214-15 (9th Cir. 2008).  "To establish a violation of Title II of the ADA, a plaintiff must show

22   that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or

23   otherwise discriminated against with regard to a public entity's services, programs, or activities; and

24   (3) such exclusion or discrimination was by reason of [his] disability."  Lovell v. Chandler, 303 F.3d

25   1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d

26   1259, 1265 (9th Cir. 2004).

27           Plaintiff is further advised that the proper defendant with respect to any ADA claim is a public

28   entity.  Individual defendants, such as those named in the instant complaint, are not a public entity and

                                                    6

1   are not a proper party to an action under the ADA.  See Vinson v. Thomas, 288 F.3d 1145, 1155-1156

2   (9th Cir. 2002).

3       **C.      Retaliation**

4       Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition

5   the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir.

6   2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866

7   F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison

8   context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that

9   a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

10  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5)

11  the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d

12  559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva,

13  658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

14      "[A] retaliation claim may assert an injury no more tangible than a chilling effect on First

15  Amendment rights."  Brodheim, 584 F.3d at 1269-1270.  Speech need not be completely silenced in

16  order to be chilled, the correct inquiry is "whether an official's act would chill or silence a person of

17  ordinary firmness from further First Amendment activities."   Rhodes, 408 F.3d at 568-569.

18      Plaintiff's allegations against Defendants C. Hernandez, M.T. Dotson, J. Madrigal, and W.

19  Tucker state a cognizable claim for retaliation for Plaintiff exercising his First Amendment rights.

20      **D.      Excessive Force**

21      The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments

22  Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992)

23  (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether

24  force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

25  sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per

26  curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705

27  F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is

28  contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation

marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff allegation that Defendant W. Tucker "grabbed and twisted [his] left arm backwards and violently shoved the wheelchair forward knowing that he had forced Plaintiff's hand in a position to get injured," after simply requesting to use the canteen, is sufficient to state a cognizable claim for excessive force in violation of the Eighth Amendment.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states cognizable claims for relief against Defendant D. Fisher for deliberate indifference to a serious risk of harm, Defendants C. Hernandez, M.T. Dotson, J. Madrigal, and W. Tucker for retaliation, and Defendant Tucker for excessive force in violation of the Eighth Amendment.  However, Plaintiff's claim does not state any other cognizable claims.

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against the Defendants and claims found to be cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff the necessary summons and USM-285 forms for completion and return.   Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is

///

not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.     Within thirty (30) days from the date of service of this order, Plaintiff must either:

      a.     File an amended complaint curing the deficiencies identified by the Court in this order, or

      b.     Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against the defendants and claims found cognizable; and

///

///

9

3.   If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   __**December 16, 2013**__            _____

UNITED STATES MAGISTRATE JUDGE