**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ALBERTO VILLESCAS,
Plaintiff,
v.
M.T. DOTSON, et al.,
Defendants.

Case No.: 1:12-cv-02068-SAB (PC)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

[ECF No. 57]

Plaintiff Alberto Villescas is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the United States Magistrate Judge. ECF No. 34; Local Rule 302.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendant Fischer for conditions of confinement in violation of the Eighth Amendment, against Defendants Dotson, Hernandez, Madrigal, and Tucker for retaliation in violation First Amendment, and against Defendant Tucker for excessive force in violation of the Eighth Amendment.

Defendants Fischer, Hernandez, Madrigal, and Tucker filed a motion for summary judgment on September 10, 2015. (ECF No. 57.) Defendant Dotson did not move for summary judgment on the claim of retaliation relating to the handling of Plaintiff's December 13, 2011, disciplinary hearing.

After receiving several extensions of time, Plaintiff filed an opposition on February 29, 2016. (ECF No. 82.) On March 14, 2016, Plaintiff filed a separate statement of disputed facts and undisputed facts. (ECF Nos. 85, 86.) Defendants filed a reply on April 6, 2016. (ECF No. 88.)

**II.**

**LEGAL STANDARD**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at its conclusion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Allegations of Complaint

Plaintiff is a disabled inmate confined at the California Department of Corrections and Rehabilitation. His disabilities consist of but are not limited to: (1) paraplegia; (2) hearing impairment; and (3) medical illness. Plaintiff's condition requires continuous medical treatment and accommodations consisting of but not limited to: (1) hearing aids; (2) braces; (3) cotton bedding; (4) dressing/catheter/colostomy supplies; (5) egg-crate mattress; (6) wheelchair; (7) cane; (8) orthopedic shoes; (9) hearing and mobility vest; and (10) housing restrictions (i.e., ground floor, lower tier/bottom bunk, no stairs in path of travel, no triple bunks and wheelchair accessible cell).

Because of Plaintiff's medical condition, he is required to ingest powerful prescription medications (e.g. methadone).

Plaintiff filed numerous grievances alleging that prison officials were deliberately indifferent to his medical needs by, but not limited to provide/re-fill his prescription medications, reducing his medications despite his obvious need for equal or stronger dosages, and failing to bring the so-called "conversion cells" up to code set forth in the Americans with Disabilities Act (ADA).

Plaintiff continuously submitted Health Care Services Request Forms (hereinafter "CDC 7362s" forms), requesting to be seen by a doctor because of the painful symptoms he was experiencing.

Prison officials including the named defendants became irate at Plaintiff's continuous appeals and requests for medical care. They developed a hostile and sinister attitude toward Plaintiff.

Plaintiff's wheelchair tires had worn down exposing the inner tubes. He was unable to roll or maneuver himself as a result. Plaintiff complained for weeks to no avail.

When a facility licensed vocational nurse (hereinafter LVN) attempted to assist Plaintiff by phoning an ADA coordinator, Defendant Hernandez deliberately intervened and prevented him from receiving any tires by instructing the assisting LVN not to contact the ADA coordinator. As a result, Plaintiff was forced to roll himself on flat tires which caused him to cut and scrape the palms of his hands, as well as caused further damage to his rims and tires.

When Plaintiff asked Hernandez why she prevented the assisting LVN from contacting the ADA coordinator, she falsely accused him of threatening her. As a direct result of Hernandez's deliberate false allegations, Plaintiff was placed in administrative segregation. Plaintiff was housed in an administrative segregation cell which did not accommodate his paraplegia condition, and he was denied all medications.

Upon Plaintiff's release from administrative segregation, he was re-housed in another so-called conversion cell. The converted cell did not meet the design guide standards of the ADA. These cells were the direct cause of the injuries Plaintiff sustained by, but not limited to: (1) improper door width (Plaintiff scraped and injured his hands against the door frame forcing himself in-and-out of the cell; (2) bunk design (the bunks are less than six-feet long and Plaintiff is six-feet, two and one-half inches tall causing him to constantly injure his head on the wall and metal locker); and (3) space (Plaintiff cannot maneuver while in his wheelchair).

The converted cell did not contain a desk, and the sink design made getting water or simply washing Plaintiff's face extremely difficult.

On October 8, 2011, Plaintiff appeared before Senior Hearing Officer (SHO), to answer the Rules Violation Report (RVR), issued by Defendant Hernandez.

Defendant Dotson acted as the SHO. Dotson made it abundantly clear that Plaintiff will not have an impartial decision-maker at his hearing. Dotson informed Plaintiff that he intended on finding him guilty of all charges because he had found him not guilty on a previous unrelated charge, and because Plaintiff "likes to file paperwork [grievances]."

Dotson deliberately refused to call any of Plaintiff's requested prisoner-witnesses, and falsely noted in the RVR that Plaintiff did not request any witnesses.

Dotson assessed a credit forfeiture of 30 days and 60 days loss of dayroom, phone, and package privileges.

On November 2, 2011, Defendant Madrigal falsely accused Plaintiff of hoarding his morning medication as an act of reprisal for filing a staff complaint against Hernandez, who is a friend of Madrigal. Madrigal then drafted a false RVR against Plaintiff.

Dotson again acted as the SHO, and informed Plaintiff at the beginning that he will not be provided an impartial decision-maker, and that he will be found guilty. Dotson warned Plaintiff that if he continues to file grievances, he is going to end up being housed in the Security Housing Unit (SHU).

Dotson refused to allow Plaintiff to ask relevant questions pursuant to the California Code of Regulations, found Plaintiff guilty, and assessed additional credit/privilege losses. Dotson also referred Plaintiff to the Unit Classification Committee (UCC), for Work Group/Privilege and/or SHU placement.

Despite the "chilling effect" implemented by the named-defendants, Plaintiff continued to grieve the issue of being housed in converted cells that were substandard which directly caused serious injuries and/or exacerbated his pre-existing injuries.

On April 3, 2012, Defendant Tucker became irate because an ADA coordinator (Ms. Brown), supervised Plaintiff as he made repairs to his wheelchair using tools specifically designated for that purpose. Tucker threatened both the ADA coordinator and Plaintiff.

On June 12, 2012, Tucker attempted to prevent Plaintiff from going to canteen by informing him that he will not be allowed to wait on the ADA wheelchair accessibility pad. Plaintiff informed Tucker that other wheelchair-bound prisoners were allowed to wait on the medical pad for their canteen since canteen was not specifically delivered to anyone except ad-seg prisoners, and because there was no place for mobility impaired prisoners to wait for their canteen.

**B.     Undisputed Facts**

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation. (Delgado Decl., Ex. P. [Plaintiff's Depo. at 9:2-5].)
2. Plaintiff was housed at Pleasant Valley State Prison (PVSP) at all times relevant to this case. (Id. at 9:6-16.)
3. Associate Warden Fischer served as the American's with Disabilities Act Coordinator at PVSP from April 2011 to October 2012. (Fisher Decl. ¶ 2.)
4. In this capacity, Fischer reviewed nearly all requests for reasonable accommodation submitted by ADA inmates during that time. (Fischer Decl. ¶ 4.)

5. As the ADA Coordinator, Fischer reviewed at least two of Plaintiff's requests for accommodation relating to his wheelchair and his cell in 2011-2012. (Delgado Decl., Ex. I at 6-7, Ex. K at 7-8.)

6. In September and November 2011, Plaintiff was issued two separate rules violations.

7. Lieutenant M. Dotson served as the Senior Hearing Officer at the related disciplinary hearings. (Delgado Decl., Ex. L & N.)

8. Licensed vocational Nurse C. Hernandez issued Plaintiff a rules violation in September 2011, for "Threatening Staff." (Delgado Decl., Ex. L.)

9. The next month, Plaintiff was found guilty of the charge at a disciplinary hearing. (Delgado Decl., Ex. L.)

10. As a result of the guilty finding, Plaintiff lost 30 days of good-time credits.[1] (Delgado Decl., Ex. L.)

11. Licensed Vocational Nurse J. Madrigal issued Plaintiff a rules violation in November 2011, for "Possession of a Controlled Medication." (Delgado Decl., Ex. N.)

12. Plaintiff was found guilty of the charge at a disciplinary hearing the following month. (Delgado Decl., Ex. N.)

13. Because the hearing was not held within Departmental time constraints, Plaintiff did not forfeit any good-time credits. (Delgado Decl., Ex. N.)

14. Defendant Tucker served a as a Correctional Officer at PVSP at all relevant times. (Delgado Decl., Ex. D.)

15. In April 2012, he refused to allow Plaintiff to use the ADA tools until he got clarification on the appropriate procedures. (Delgado Decl., Ex. K.)

16. Two months later, he was involved in a separate incident with Plaintiff in which he handcuffed Plaintiff and escorted him from the Facility C recreation yard. (Delgado Decl., Ex. P.)

[1] Plaintiff objects and denies this statement because any credit loss does not impact or affect his sentence of 26 years to life. Plaintiff's objection does not dispute the basic fact that he lost good-time credits as a result of the guilty finding, the determination of whether such credit loss will affect his sentence is a different factual determination.

17. Plaintiff was issued a rules violation for the June 2012 incident and found guilty at a disciplinary hearing. (Delgado Decl., Ex. P.-

18. Plaintiff lost 30-days' good-time credits as a result of the guilty finding.[2] (Delgado Decl., Ex. P.)

19. In Facility C's various housing units, cells 108 and 143 were the converted cells. (Delgado Decl., Ex. P [Plaintiff's Depo. at 45:24-46:9]; Fisher Decl. ¶ 6.)

20. On September 20, 2011, Plaintiff filed an administrative grievance that described a problem he was having with nursing staff, and specifically, his claim that nursing staff were interfering with his ability to obtain replacement tires for his wheelchair, among other things. (Delgado Decl., Ex. I; Fisher Decl. ¶ 5.)

23. A correctional sergeant interviewed Plaintiff approximately three weeks later, and at that time, the sergeant confirmed that Plaintiff had already been issued a new set of tubes, tires, and casters for his wheelchair. (Delgado Decl., Ex. I; Fisher Decl. ¶ 5.)

24. Those items had been issued on October 10, 2011. (Delgado Decl., Ex. I; Fisher Decl. ¶ 5.)

25. The correctional sergeant interviewed Plaintiff and completed the first-level appeal response the following day. (Delgado Decl., Ex. I; Fisher Decl. ¶ 5.)

26. Defendant Fischer reviewed and approved the appeal response three days later, on October 14, 2011. (Delgado Decl., Ex. I; Fisher Decl. ¶ 5.)

27. In October 2011, Plaintiff filed another administrative grievance stating that the modified cells at PVSP were not in compliance with the ADA. (Delgado Decl., Ex. J; Fisher Decl. ¶ 7.)

28. The grievance was assigned log number PVSP-ADA-11-01574.

29. In it Plaintiff stated the modified cells were not ADA-compliant because the bunks were too low, the beds were too short, there were no desks in the cells, the cell doors

---

[2] Plaintiff's objection is rejected for the same reasons set forth in footnote number one.

weren't wide enough, the buttons on the sink were hard to push, and there was insufficient space in the cells. (Delgado Decl., Ex. J; Fisher Decl. ¶ 7.)

30. Roughly two weeks later, Plaintiff met with Michael Rainwater, PVSP's Supervisor of Building Trades, to discuss his grievance at the first level of administrative review. (Delgado Decl., Ex. J; Fisher Decl. ¶ 8.)

31. During the interview, Plaintiff stated that the buttons on his sink were working properly. (Delgado Decl., Ex. J; Fisher Decl. ¶ 8.)

32. Plaintiff was also issued a writing tablet for writing. (Delgado Decl., Ex. J; Fisher Decl. ¶ 8.)

33. As a result of the interview, Mr. Rainwater also ensured that all of the features in the modified cells were constructed in accordance with the approved Architectural Plans from CDCR headquarters. (Delgado Decl., Ex. J; Fisher Decl. ¶ 8.)

34. Plaintiff filed an accommodation request on April 22, 2012, asking that Officer Tucker be trained in the policy regarding correctional staff issuing wheelchair repair tools. (Delgado Decl., Ex. K; Fisher Decl. ¶ 13.)

35. Correctional Lieutenant Burns interviewed Plaintiff about his request two weeks later, on May 5, 2012. (Delgado Decl., Ex. K; Fisher Decl. ¶ 13.)

36. Lieutenant Burns also interviewed Officer Tucker, who explained his confusion over when the repair tools could be issued to inmates. (Delgado Decl., Ex. K; Fisher Decl. ¶ 13.)

37. Burns also confirmed that Officer Tucker was provided training regarding the repair tools by an ADA staff representative on the day Plaintiff required assistance. (Delgado Decl., Ex. K; Fisher Decl. ¶ 13.)

38. Lieutenant Burns found that Officer Tucker did not act outside the scope of his duties, but rather, took the proper steps by contacting his immediate supervisor to get clarification on the procedures for wheelchair repairs. (Delgado Decl., Ex. F; Fisher Decl. ¶ 13.)

39. Fischer reviewed and approved Lieutenant Burns's findings ten days later, on May 14, 2012. (Delgado Decl., Ex. K; Fisher Decl. ¶ 14.)

40. After reviewing the first-level response, Fischer concurred fully with Burns's findings. (Delgado Decl., Ex. K; Fisher Decl. ¶ 14.)

41. The first-level response was confirmed at the second and third-levels of administrative review. (Delgado Decl., Ex. K; Fisher Decl. ¶ 14.)

**C. Analysis of Defendants' Motion**

Defendants move for summary judgment in their favor because the undisputed facts and evidence demonstrate that: Defendant Fisher's actions were reasonable under the circumstances and show that he did not know of and disregarded a serious risk of harm to Plaintiff's health or safety; Plaintiff's retaliation claims against Defendants Dotson, Hernandez, and Tucker are barred under Heck and Balisok's favorable termination rule; Defendant Madrigal did not issue a rules violation report to Plaintiff based on his protected conduct; and, Defendant Tucker's actions in response to Plaintiff's behaviors were reasonable, served a legitimate penological goal, were without malice, and the force used was de minimis.

1. Defendant Fischer-Cruel and Unusual Punishment

Plaintiff alleges that Defendant Fischer was deliberately indifferent to his health and safety in three ways: (1) by failing to see that Plaintiff's wheelchair tires were replaced in a timely manner; (2) by failing to ensure that the converted ADA cells at the prison met the design standards set forth by the ADA and the Armstrong Remedial Plan; and (3) by failing to properly respond to an administrative grievance concerning Officer Tucker. (Delgado Decl., Ex. O [Plaintiff's Depo. at 32:22-34:15, 50:6-51:2[.) Each claim will be analyzed separately.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks

omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

**a. Replacement of Wheelchair Tires**

Defendant Fisher submits that on September 20, 2011, Plaintiff filed an administrative grievance claiming that nursing staff were interfering with his ability to obtain replacement tires for his wheelchair, among other things. Plaintiff was interviewed by a correctional sergeant approximately three weeks later, and it was determined that Plaintiff had already been issued a new set of tubes, tires, and casters for his wheelchair. (Fischer Decl. ¶ 5.) Indeed, the items were issued on October 10, 2011. (Id.) After Plaintiff was interviewed, a first-level response was issued on October 11, 2011. (Id.) Defendant Fischer reviewed and approved the appeal response three days later, on October 14, 2011. (Id.) Inasmuch as Plaintiff requested parts for his wheelchair, his request was granted on October 10, 2011. (Id.) In Fischer's experience "a delay of 2-3 weeks from the time an inmate submitted an administrative grievance to the time he was formally interviewed was not unusual, given the sheer volume of inmate appeals we were processing at PVSP at the time." (Id.) If prison officials act reasonably there can be no liability for cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 299 (1991).

Defendant Fischer has met his initial burden of producing evidence demonstrating that he acted reasonable and did not disregard a known risk of serious harm to Plaintiff's health and safety. The burden now shifts to Plaintiff to demonstrate otherwise.

In his opposition, Plaintiff simply argues that he has "shown Defendant Fischer knew of and disregarded a serious risk to Plaintiff's health and safety." (ECF No. 82, Opp'n at 1:25-28.) Plaintiff references his complaint and the inmate appeals he filed regarding such complaints, Defendant Fischer's interrogatory responses, and approximately sixteen pages of his deposition testimony to support his argument. (Id.)

Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant Fischer was deliberately indifference to a substantial risk of harm to his health or safety with regard to the replacement tires for his wheelchairs. Accordingly, Defendant Fischer is entitled to summary judgment on this claim.

**b. Converted ADA Cells**

Defendant Fischer declares that the doors on the converted cells were not as wide as the regular ADA cells (cells 109 and 142), but he recalls that Plaintiff's personal wheelchair had canted wheels (tilted at the top), and thus, if the bottom of the wheels fit through the door, it should not have been possible for him to scrape his hands on the doors as he claims. (Fischer Decl. ¶ 9.)

In October 2011, Plaintiff filed an inmate appeal contending the modified cells at Pleasant Valley State Prison were not in compliance with the ADA. (Delgado Decl., Ex. J; Fischer Decl. ¶ 7.) The grievance was assigned log number PVSP-ADA-11-01574. (Id.) Plaintiff claimed the modified cells were not ADA-compliant because the bunks were too low, the beds were too short, there were no desks in the cells, the cell doors weren't wide enough, the buttons on the sink were hard to push, and there was insufficient space in the cells. (Id.)

Approximately two weeks after the appeal was filed, Plaintiff met with Michael Rainwater, PVSP's Supervisor of Building Trades, to discuss his grievance at the first level of administrative review. (Delgado Decl., Ex. J; Fischer Decl. ¶ 8.) During the interview, Plaintiff stated that the buttons on his sink were working properly. (Id.) In response to Plaintiff's appeal, Plaintiff was issued an extra mattress to address his complaint about the level of bunk being too low. (Id.) Plaintiff was

also issued a writing tabled for writing.  (Id.)  Mr. Rainwater also ensured that the features of the modified cells were constructed in compliance with the approved Architectural Plans from CDCR headquarters.  (Id.)

At the time Plaintiff's appeal was processed in November 2011, PVSP had an unusually large number of inmates in the Disability Placement Program and all of the regular ADA cells were occupied by other inmates.  (Delgado Decl., Ex. J; Fischer Decl. ¶ 9.)  As soon as one of the regular ADA cells became available in December 2011, Plaintiff was transferred into such a cell.  (Id.)

Plaintiff's opposition consists of four pages of argument with citations to exhibits attached to his complaint dealing with his complaints regarding the length of his bed bunk in his converted cell.[3] Plaintiff's conclusory and vague claim that the doorway was not wide enough is insufficient to create a genuine issue of material fact as to whether Fischer was deliberately indifferent a serious medical need in violation of the Eighth Amendment.  Indeed, there is no evidence that Plaintiff was not able to maneuver his wheelchair to "wheel" through the door opening.  Further, there is no evidence that Plaintiff ever sought assistance with maneuvering through the door opening.

With regard to the bed length, there is no evidence that the length of the bed bunk was deliberately indifferent to Plaintiff's health and safety, and in response to Plaintiff's complaint he was provided an extra mattress.  While Plaintiff's allegations that he was subjected to cruel and unusual punishment was sufficient at the pleading stage, on summary judgment he has not produced any evidence that Fischer was deliberately indifferent to a serious risk to his health and safety.  Accordingly, Defendant Fischer is entitled to summary judgment on this claim.

As Fischer declares a handful of regular cells throughout PVSP have been retrofitted to meet ADA-design guidelines.  In Facility C's various housing units, cells 108 and 143 were the controverted cells.  These cells were modified using ADA-specified and approved architectural plans, and when complete, they were in full compliance with ADA design guidelines and the Armstrong

---

[3] "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'"  Keenan v. Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting McElyea v. Babbitt, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), amended by 135 F.3d 1318 (9th Cir. 1998); see also Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 (n. 14 (9th Cir. 2000).

Remedial Plan. (Fischer Decl. ¶ 6.) Furthermore, with respect to Plaintiff's claim that the bed length was not long enough, an inmate's height is not protected by the ADA. (citation.) A 7' tall inmate is longer than the bunks in a standard cell, but such circumstance does not qualify as a disability under the ADA. (Fischer Decl. ¶ 10.)

Based on the foregoing, Defendant Fischer is entitled to summary judgment on this claim.

**c. Administrative Grievance Regarding Officer Tucker**

Fischer reviewed and approved Plaintiff's grievance regarding officer Tucker, but he was not aware that officer Tucker ever refused to issue the ADA tools after his training, or that Plaintiff had any other issues with officer Tucker.

Accordingly, Defendant Fischer has met his burden of proof in demonstrating the lack of a genuine issue of material fact. The burden now shifts to Plaintiff to produce evidence to the contrary. Plaintiff has failed to present evidence to demonstrate that Defendant Fischer was aware of Tucker's refusal to issue the ADA tools after his training, or that Plaintiff had any other issues with officer Tucker. In his complaint and in support of this claim, Plaintiff cites to exhibits H which are the inmate appeals and requests for accommodation regarding Tucker's refusal to allow him to use ADA tools to repair his wheelchair. (ECF No. 1, Compl. Exs. H1-H16.)

Plaintiff filed an accommodation request on April 22, 2012, requesting that officer Tucker be trained in the policy regarding correctional staff issuing wheelchair repair tools. (Compl. Exs H1-H5; Fischer Decl. ¶ 13.) Correctional Lieutenant Burns interviewed Plaintiff about his request two weeks later, on May 5, 2012. (Fischer Decl. ¶ 13.) Burns also interviewed Tucker who explained his confusion over when the repair tools could be issued to inmates. (Id.) Burns confirmed that Tucker was provided training regarding the use of repair tools by an ADA staff representative on the day Plaintiff requested assistance. (Id.)

After reviewing the first-level response by Lieutenant Burns, Defendant Fischer concurred fully with Burns's findings. (Fischer Decl. ¶ 14.) Fischer declares that "[t]o the extent [Plaintiff] now claims that Officer Tucker refused to issue the ADA tools and air pump following his training on April 3, 2012, I am not aware that Officer Tucker ever refused to issue the ADA tools after his training, or that [Plaintiff] had any other issues with Officer Tucker." (Fischer Decl. ¶ 14.)

Plaintiff has failed to put forth any evidence that Defendant Fischer was aware of any misconduct by Tucker after the incident on April 22, 2012, which was addressed and resolved on May 12, 2012 in appeal Log No. PVSP-C-12-01012 (first level review). Accordingly, Defendant Fischer is entitled to summary judgment on this claim.

2. Defendants Dotson, Hernandez, and Tucker-Retaliation Claims

Defendants move for summary judgment on Plaintiff's retaliation claims solely on the basis that the claims are barred by Heck v. Humphrey's favorable termination rule.

In opposition, Plaintiff submits that he is serving a life sentence and any loss of credit will not impact the length of his incarceration and therefore such claims are not barred by the favorable termination rule.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

"[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." Brodheim, 584 F.3d at 1269-1270. Speech need not be completely silenced in order to be chilled, the correct inquiry is "whether an official's act would chill or silence a person of ordinary firmness from further First Amendment activities." Rhodes, 408 F.3d at 568-569.

Defendants argue that Plaintiff's retaliation claims against them are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641, 648 (1997). Under Heck, a prisoner may not proceed on a claim for damages under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487; Edwards v.

Balisok, 520 U.S. at 648 (applying Heck to a prison disciplinary hearing where good-time credits were affected).  In such a case, Plaintiff is foreclosed from proceeding absent proof that the conviction or sentence has been reversed, expunged or invalidated. Id. at 486-487.  However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed …." Id. at 487.  As an illustration of the rule's application, the Heck Court explained that an individual convicted of resisting arrest, defined as intentionally preventing a peace officer from affecting a lawful arrest, would be barred from bringing a damages claim for unlawful arrest. Id. at 487 n. 6.  That result is compelled by the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the arrest. Id.

Plaintiff submits (and Defendants do not present evidence otherwise) that he is serving an indeterminate life sentence.  (Opp'n at 2-3; ECF No. 82.)  As a life-term prisoner, the 90-day loss of credits will have no effect on Plaintiff's maximum sentence.  Even if the loss of credits has affected Plaintiff's minimum eligible parole date (MEPD), a change in Plaintiff's MEPD will not necessarily affect the length of his sentence.  Defendants have failed to demonstrate how the loss of credits resulting from the disciplinary conviction will have any impact on the length of Plaintiff's confinement. See Nettles v. Grounds, No. 12-16935 (9th Cir. July 26, 2016) (finding that a prisoner's claim which, if successful, would not necessarily lead to immediate or speedier release fell outside the "core of habeas corpus" and section 1983 was the proper vehicle); Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003) ("[W]here … a successful § 1983 action would not necessarily result in an earlier release from incarceration … the favorable termination rule of Heck and Edwards does not apply.") Accordingly, Defendant's motion for summary judgment should therefore be denied on this ground.

        3.        Defendant Madrigal-Retaliation Claim

In his verified complaint, Plaintiff alleges that Defendant nurse Madrigal falsely accused him of hoarding his morning medication resulting in disciplinary action in retaliation for his previous act of filing a staff complaint against nurse Hernandez.  Plaintiff indicates that Madrigal falsified the charges because he believes nurse Hernandez is a "friend."

Defendant argues now that discovery has passed, Plaintiff's claim clearly fails on an essential element, namely, a lack of causation. As previously stated above, a viable claim of First Amendment retaliation entails five essential elements: (1) An assertion that a state actor took some adverse action against an inmate; (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-568.

In opposition, Plaintiff declares that "Madrigal made a statement along the lines of, 'you keep filing on people you will keep getting written up.'" (ECF No. 82, Opp'n at 2:16-17.) "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012); Van Asdale v. International Game Tech., 577 F.3d 989, 998 (9th Cir. 2009). However, "[i]n order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Yeager, 693 F.3d at 1080; Van Asdale, 577 F.3d at 998-999. "The non-moving party is not precluded from elaborating upon, explaining, or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Yeager, 693 F.3d at 1081; Van Asdale, 577 F.3d at 999.

Defendant urges the Court not to consider Plaintiff's declaration in opposition to summary judgment on the grounds that it is self-serving and devoid of factual support. While Plaintiff's declaration may be self-serving such fact does not render it irrelevant in determining the motion for summary judgment. The Court cannot find that Plaintiff's declaration is inconsistent with his complaint and deposition testimony, as such rule only applies on summary judgment if the inconsistency between a party's deposition testimony and subsequent declaration is clear and unambiguous. "Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015). Here, the declaration and statement attributed to Defendant

Madrigal is consistent with Plaintiff's theory that Madrigal retaliated against him by issuing a false rules violation report because of the complaint against officer Hernandez. Thus, the Court cannot simply disregard Plaintiff's declaration, and a genuine issue of material fact exists as to whether Defendant Madrigal retaliated against Plaintiff for filing a complaint against officer Hernandez. See Nigro, 784 F.3d at 498 (declarations submitted by a party, although uncorroborated and self-serving, may be sufficient to create a genuine issue of material fact where they are "based on personal knowledge, legally relevant, and internally consistent.") There is no testimony by Plaintiff in which he denied that Madrigal made a comment to him. The fact that Plaintiff's complaint and deposition testimony do not address the fact does not alone make Plaintiff's subsequent declaration a sham. Plaintiff's declaration is sufficient to create a genuine issue of material fact that Defendant Madrigal retaliated against him because he filed a grievance against officer Hernandez, and summary judgment must be denied.

4. <u>Defendant Tucker-Excessive Force Claim</u>

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (per curiam) (citing <u>Hudson</u>, 503 U.S. at 7) (internal quotation marks omitted); <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, <u>Hudson</u>, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, <u>Wilkins</u>, 559 U.S. at 37-38 (citing <u>Hudson</u>, 503 U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

In his complaint, Plaintiff alleges that Defendant W. Tucker "grabbed and twisted [his] left arm backwards and violently shoved the wheelchair forward knowing that he had forced Plaintiff's hand in

a position to get injured," after simply requesting to use the canteen. (Compl. at 9, ECF No. 1.) Plaintiff alleged his hand was injured during the incident. (Id.)

Defendant argues that now that discovery has been taken, Plaintiff's excessive-force claim against him cannot stand. At his deposition, Plaintiff clarified that after officer Tucker placed his hands behind his back to apply handcuffs, his hand was wedged between his wheelchair frame and the tires for just a few seconds, and when Tucker learned that Plaintiff's hand was in a compromised position, he pulled it out immediately. (Pl. Dep. at 118:11-119:12.) Defendant has met his burden in demonstrating Defendant Tucker's actions did not amount to an Eighth Amendment violation. The burden now shifts to Plaintiff to present evidence otherwise.

Plaintiff's evidence consists of nothing more than speculation. In his opposition, Plaintiff contends that Tucker "acted with malice when absolutely NO force was needed …." (Opp'n at 2.) However, mere speculation that Defendant Tucker harbored ill-will toward Plaintiff is not sufficient to defeat summary judgment, particularly given that Plaintiff's deposition testimony contradicts the claim that Defendant Tucker acted with ill-will. The crucial point is what Defendant did when he pulled Plaintiff's wheelchair. The Court will treat Plaintiff's version as true in ruling on the motion. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (if evidence produced by moving party conflicts with evidence produced by nonmoving party, court should assume the truth of nonmoving party's evidence). Assuming the truth of Plaintiff's contentions, the evidence that Defendant acted maliciously and sadistically to cause harm is that officer Tucker placed handcuffs on Plaintiff, after he refused to leave the dock area, and while doing so Plaintiff's hand got stuck between the frame and tire of his wheelchair. When Plaintiff complained of the pain to his hand, Tucker immediately removed it from the compromised position. This evidence, at most, supports a showing of lack of due care, i.e., negligence. However, negligence is insufficient to support a claim for excessive force, and Plaintiff's evidence does not demonstrate a genuine issue of material fact as to the malicious and sadistic standard. See In re Oracle Corporation Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) ("[T]he nonmoving party's] burden is not a light one … [he or she] must show more than the mere existence of a scintilla of evidence … more than show there is some 'metaphysical doubt' as to the material facts at issue." (quoting Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Plaintiff has failed to present evidence from which a reasonable juror could infer Defendant Tucker applied force by grabbing and moving his wheelchair "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-321.

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, it is HEREBY ORDERED that Defendants' motion for summary judgment is granted in part and denied in part as follows:

1. Summary judgment is granted in favor of Defendant Fischer on Plaintiff's cruel and unusual punishment claim;
2. Summary judgment is denied as to Plaintiff's retaliation claim against Defendants Dotson, Hernandez, and Tucker;
3. Summary judgment is denied as to Plaintiff's retaliation claim against Defendant Madrigal; and
4. Summary judgment is granted in favor of Defendant Tucker on Plaintiff's claim of excessive force.

IT IS SO ORDERED.

Dated: **September 19, 2016**

UNITED STATES MAGISTRATE JUDGE