1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **EASTERN DISTRICT OF CALIFORNIA**

10

11  ALBERTO VILLESCAS,                    )  Case No.: 1:12-cv-02068-SAB (PC)
                                          )
12                    Plaintiff,          )
                                          )
13            v.                          )  ORDER GRANTING IN PART AND
                                          )  DENYING IN PART PLAINTIFF'S MOTION
14  M.T. DOTSON, et al.,                  )   FOR ATTENDANCE OF INCARCERATED
                                          )  WITNESSES AT TRIAL
15                    Defendants.         )
                                          )  [ECF No. 99]
16                                        )
                                          )
17                                        )
    _____      )

18         Plaintiff Alberto Villescas is appearing pro se and in forma pauperis in this civil rights action

19  pursuant to 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

20  jurisdiction of the United States Magistrate Judge.  ECF No. 34; Local Rule 302.  This case is set for

21  jury trial before the undersigned on May 23, 2017, at 8:15 a.m.

22         On January 5, 2017, Plaintiff filed a motion for the attendance of incarcerated witnesses at

23  trial.  (ECF No. 99.)  Defendants filed an opposition on January 11, 2017.  (ECF No. 102.)

24         This action proceeds on Plaintiff's claims of retaliation by Defendants Dotson, Hernandez,

25  Madrigal, and Tucker.  Plaintiff specifically alleges that Defendant Hernandez prevented him from

26  receiving tires for his wheelchair and issued a false report accusing Plaintiff of threatening her.

27  Defendant Madrigal falsely accused Plaintiff of hoarding medication.  Defendant Tucker refused to let

28  Plaintiff use tools to repair his wheelchair, attempted to prevent Plaintiff from going to canteen, and

1

prepared a false rules-violation report.  Defendant Dotson served as the Senior Hearing Officer for two of Plaintiff's rules violations, found Plaintiff guilty, and refused to examine inmate-witnesses.

**I.**

**DISCUSSION**

**A.      Allegations of Operative Complaint**

Plaintiff is a disabled inmate confined at the California Department of Corrections and Rehabilitation.  His disabilities consist of but are not limited to: (1) paraplegia; (2) hearing impairment; and (3) medical illness.  Plaintiff's condition requires continuous medical treatment and accommodations consisting of but not limited to: (1) hearing aids; (2) braces; (3) cotton bedding; (4) dressing/catheter/colostomy supplies; (5) egg-crate mattress; (6) wheelchair; (7) cane; (8) orthopedic shoes; (9) hearing and mobility vest; and (10) housing restrictions (i.e., ground floor, lower tier/bottom bunk, no stairs in path of travel, no triple bunks and wheelchair accessible cell).

Because of Plaintiff's medical condition, he is required to ingest powerful prescription medications (e.g. methadone).

Plaintiff filed numerous grievances alleging that prison officials were deliberately indifferent to his medical needs by, but not limited to provide/re-fill his prescription medications, reducing his medications despite his obvious need for equal or stronger dosages, and failing to bring the so-called "conversion cells" up to code set forth in the Americans with Disabilities Act (ADA).

Plaintiff continuously submitted Health Care Services Request Forms (hereinafter "CDC 7362s" forms), requesting to be seen by a doctor because of the painful symptoms he was experiencing.

Prison officials including the named defendants became irate at Plaintiff's continuous appeals and requests for medical care.  They developed a hostile and sinister attitude toward Plaintiff.

Plaintiff's wheelchair tires had worn down exposing the inner tubes.  He was unable to roll or maneuver himself as a result.  Plaintiff complained for weeks to no avail.

When a facility licensed vocational nurse (hereinafter LVN) attempted to assist Plaintiff by phoning an ADA coordinator, Defendant Hernandez deliberately intervened and prevented him from receiving any tires by instructing the assisting LVN not to contact the ADA coordinator.  As a result,

Plaintiff was forced to roll himself on flat tires which caused him to cut and scrape the palms of his hands, as well as caused further damage to his rims and tires.

When Plaintiff asked Hernandez why she prevented the assisting LVN from contacting the ADA coordinator, she falsely accused him of threatening her.  As a direct result of Hernandez's deliberate false allegations, Plaintiff was placed in administrative segregation.  Plaintiff was housed in an administrative segregation cell which did not accommodate his paraplegia condition, and he was denied all medications.

Upon Plaintiff's release from administrative segregation, he was re-housed in another so-called conversion cell.  The converted cell did not meet the design guide standards of the ADA.  These cells were the direct cause of the injuries Plaintiff sustained by, but not limited to: (1) improper door width (Plaintiff scraped and injured his hands against the door frame forcing himself in-and-out of the cell; (2) bunk design (the bunks are less than six-feet long and Plaintiff is six-feet, two and one-half inches tall causing him to constantly injure his head on the wall and metal locker); and (3) space (Plaintiff cannot maneuver while in his wheelchair).

The converted cell did not contain a desk, and the sink design made getting water or simply washing Plaintiff's face extremely difficult.

On October 8, 2011, Plaintiff appeared before Senior Hearing Officer (SHO), to answer the Rules Violation Report (RVR), issued by Defendant Hernandez.

Defendant Dotson acted as the SHO.  Dotson made it abundantly clear that Plaintiff will not have an impartial decision-maker at his hearing.  Dotson informed Plaintiff that he intended on finding him guilty of all charges because he had found him not guilty on a previous unrelated charge, and because Plaintiff "likes to file paperwork [grievances]."

Dotson deliberately refused to call any of Plaintiff's requested prisoner-witnesses, and falsely noted in the RVR that Plaintiff did not request any witnesses.

Dotson assessed a credit forfeiture of 30 days and 60 days loss of dayroom, phone, and package privileges.

On November 2, 2011, Defendant Madrigal falsely accused Plaintiff of hoarding his morning medication as an act of reprisal for filing a staff complaint against Hernandez, who is a friend of Madrigal.  Madrigal then drafted a false RVR against Plaintiff.

Dotson again acted as the SHO, and informed Plaintiff at the beginning that he will not be provided an impartial decision-maker, and that he will be found guilty.  Dotson warned Plaintiff that if he continues to file grievances, he is going to end up being housed in the Security Housing Unit (SHU).

Dotson refused to allow Plaintiff to ask relevant questions pursuant to the California Code of Regulations, found Plaintiff guilty, and assessed additional credit/privilege losses.  Dotson also referred Plaintiff to the Unit Classification Committee (UCC), for Work Group/Privilege and/or SHU placement.

Despite the "chilling effect" implemented by the named-defendants, Plaintiff continued to grieve the issue of being housed in converted cells that were substandard which directly caused serious injuries and/or exacerbated his pre-existing injuries.

On April 3, 2012, Defendant Tucker became irate because an ADA coordinator (Ms. Brown), supervised Plaintiff as he made repairs to his wheelchair using tools specifically designated for that purpose.  Tucker threatened both the ADA coordinator and Plaintiff.

On June 12, 2012, Tucker attempted to prevent Plaintiff from going to canteen by informing him that he will not be allowed to wait on the ADA wheelchair accessibility pad.  Plaintiff informed Tucker that other wheelchair-bound prisoners were allowed to wait on the medical pad for their canteen since canteen was not specifically delivered to anyone except administrative segregation prisoners, and because there was no place for mobility impaired prisoners to wait for their canteen.

### B.    Legal Standard

The uncertainty regarding whether or not the proposed witnesses are willing to testify voluntarily does not preclude this Court from ordering their transportation.  Rather, in determining whether to grant Plaintiff's motion for the attendance of his proposed witnesses, factors to be taken into consideration include (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, and (3) the expense of

transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted.  Wiggins v. County of Alameda, 717 F.2d 466, 468 n.1 (9th Cir. 1983); see also Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994) (district court did not abuse its discretion when it concluded the inconvenience and expense of transporting inmate witness outweighed any benefit he could provide where the importance of the witness's testimony could not be determined), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff requests the attendance of following four inmate-witnesses: (1) William Milton, CDCR #P38650; (2) Curtis Jackson, CDCR #J88116; (2) Byron Myers, CDCR #E26677; and (4) Leo Mepham, CDCR #B52359.  In support of each witnesses proposed testimony, Plaintiff submits his own declaration declaring the relevance of such testimony.

Defendants oppose the attendance of all four witnesses because Plaintiff has failed to provide facts supporting his conclusion that these witnesses have relevant and non-cumulative information and the proposed testimony relating to events that are not part of the lawsuit is irrelevant.

The Court initially notes that although Defendants submit that Plaintiff has indicated these witnesses are unwilling to testify, such determination appears to be made because Plaintiff has been unable to obtain a present willingness to testify due to the fact that the inmates have been transferred, something Plaintiff has no control over.  Thus, the Court finds that this factor does not weigh against the attendance of the inmate-witnesses.

1.    Inmate William Milton

Plaintiff contends that inmate William Milton was an eye and ear witness on September 20, 2011, when Defendant Licensed Vocational Nurse Hernandez alleged that Plaintiff yelled and insulted her from his cell C2-108, as Milton was housed in cell C2-107.

Milton was called as a witness on October 12, 2011 for the hearing conducted by Defendant Dotson.  Plaintiff and Dotson were discussing why Dotson refused to allow Milton as a witness.

Milton was present with Plaintiff each time he approached the facility C medical window on November 2, 2011, when Defendant Madrigal falsely accused Plaintiff of several illegal actions of misconduct.

1   Defendants argue that Plaintiff fails to explain the foundation for his conclusion about what

2   inmate Milton heard, and fails to indicate what relevant testimony these inmates would have to offer

3   regarding any event on the day in question.

4   Based on the allegations in the operative complaint as a whole and Plaintiff's representations

5   (which are more than vague conclusions), the Court finds that Plaintiff has met his burden in

6   demonstrating that inmate William Milton has relevant firsthand knowledge that may substantially

7   further the resolution of this case against Defendants, and the Court grants Plaintiff's request for

8   attendance of inmate Milton at trial.

9   2.   Inmate Curtis Jackson

10   Plaintiff contends he has firsthand knowledge that inmate Curtis Jackson was an eye and ear

11   witness on September 20, 2011, when Defendant Hernandez claims Plaintiff was yelling out of his cell

12   C2-108, as Jackson was housed in cell C2-109.  During this time, Jackson was in line for his

13   medication and was immediately next to Plaintiff.

14    Defendants argue that Plaintiff fails to explain the foundation for his conclusion about what

15   inmate Jackson heard, and fails to indicate what relevant testimony these inmates would have to offer

16   regarding any event on the day in question.  The Court agrees.

17   Federal Rule of Evidence 403 provides that otherwise relevant testimony may be excluded on

18   the grounds of undue delay, waste of time, or needless presentation of cumulative evidence.  Courts

19   have broad discretion "to limit the number of witnesses on a particular point to avoid cumulative

20   evidence," Lutz v. Glendale Union High School, 403 F.3d 1061, 1071 (9th Cir. 2005), but they must

21   not "sacrifice justice in the name of efficiency," Navellier v. Sletten, 262 F.3d 923, 941 (9th Cir.

22   2001).   "As a general rule, evidence may not be excluded solely to avoid delay."  General Signal

23   Corp. v. MCI Telecommmuncations Corp., 66 F.3d 1500, 1509 (9th Cir. 1995).  Rather, "[u]nder Rule

24   403, the court should consider the probative value of the proffered evidence and balance it against the

25   harm of delay.  General Signal Corp., 66 F.3d at 1509-1510.

26   Plaintiff has not met his burden in demonstrating that inmate Curtis Jackson has relevant first-

27   hand knowledge that may substantially further the resolution of this case against Defendants, as

28

Jackson's testimony is merely cumulative of the proposed testimony by inmate Milton and Plaintiff himself.  Accordingly, the Court denies Plaintiff's request for attendance of inmate Jackson.

        3.    <u>Inmate Byron Myers</u>

Plaintiff contends he has firsthand knowledge that inmate Byron Myers was an eye and ear witness on November 2, 2011 and the following days, when Defendant Madrigal falsely claims Plaintiff violated rules and made comments at the facility C medication window.  Plaintiff asked Myers (and Milton) to stay close whenever Plaintiff went to the window because he already knew of Defendants "conspiracy" to retaliate against Plaintiff.

Further, inmate Myers was witness to comments made by Defendant Dotson at the program office when Dotson had the hearing on November 13, 2011.  Myers was outside the program office for personal reasons.

Myers was a witness on June 12, 2012, when Defendant Tucker assaulted Plaintiff on the facility C medical pad awaiting canteen.

Defendants argue that Plaintiff concludes, without foundational facts, that inmate Myers was "witness" to comments made by Lieutenant Dotson.  Defendants argue that Myers has no firsthand knowledge relevant to Plaintiff's claims against Dotson because Myers did not personally attend the disciplinary hearing conducted by Dotson.

Defendants correctly point out that Plaintiff's excessive force claim against Defendant Tucker has been dismissed, but Plaintiff's retaliation claim against Tucker remains and the June 12, 2012 incident is one instance of retaliation by Tucker.  However, Plaintiff's allegations amount to more than the mere rules violation hearing, as Plaintiff alleges comments were made by Dotson, overheard by Myers, which potentially suggests the actions were done in retaliation.  Accordingly, based on the representations presented by Plaintiff, the Court grants Plaintiff's motion for the attendance of inmate Myers.

        4.    <u>Inmate Leo Mepham</u>

Plaintiff has actual and firsthand knowledge that inmate Leo Mepham was an eye and ear witness on November 2, 2011 and the following days, at the facility C medication window when

1    Defendant Madrigal claims Plaintiff violated rules and made comments.  Mepham was at the clinic to

2    address his medical needs.

3            Mepham was a witness on April 3, 2012, in front of program office, when Defendant Tucker

4    refused to let Plaintiff use tools because Plaintiff "files to[o] many complaints."

5            Mepham was a witness in May 2012, when Defendant Dotson had Plaintiff put in

6    administrative segregation unit for filing CDC 1824s-accommodation forms.  Mepham heard officers

7    tell Plaintiff he was going to the hole for upsetting Dotson with complaints.

8            Mepham was witness on June 12, 2012, when Defendant Tucker assaulted Plaintiff on the

9    facility C medical pad awaiting canteen.  Defendants correctly point out that Plaintiff's excessive force

10   claim against Defendant Tucker has been dismissed, but Plaintiff's retaliation claim against Tucker

11   remains, and the June 12, 2012, is one instance of retaliation by Tucker.

12           Defendants' argument that Plaintiff has changed his story after discovery has closed is not

13   persuasive.  Based on Plaintiff's allegations in the operative complaint and the response to Defendant

14   Fisher's interrogatory Number 18, it is not clear that Plaintiff was required to disclose such statement

15   and such statement is consistent with Plaintiff's allegations in the complaint.  In addition, Defendants

16   fail to present a showing of prejudice and/or unfair surprise.  Further, there is no showing that Plaintiff

17   was asked, but failed to disclose, the identity of any witness with regard to his retaliation claim against

18   Defendant Tucker.  Defendants citation to Goins v. Cty of Merced, No. 1:13-CV-1245-AWI SKO,

19   2015 WL 3991628, at *7 (E.D. Cal. June 30, 2015), is inapposite.  In Goins, the plaintiff failed to

20   disclose discoverable information in support of alleged physical injuries, and later after the close of

21   discovery attempted to introduce medical records to support a finding of physical injury.  Here,

22   Plaintiff has not failed to disclose the retaliatory actions against Defendant Tucker, and Plaintiff

23   merely submits proposed testimony by an inmate witness in support of his claim.  Moreover, any

24   testimony by inmate Mepham will not necessarily bolster Plaintiff's theory of the case because

25   Mepham can only testify to that for which he has firsthand knowledge.

26           Further, Plaintiff's complaint and interrogatory response make reference to the alleged

27   retaliatory action of Dotson placing Plaintiff in administrative segregation and/or security housing unit

28   in retaliation.  (See Compl. at ¶ 27; ECF No. 57-4 at 50.)  It was specifically alleged in the complaint

1    that Dotson warned Plaintiff that if he continues to file grievances, he is going to end up being housed

2    in the Security Housing Unit (SHU).  (Compl. at ¶ 27.)

3                                                    **II.**

4                                **CONCLUSION AND ORDER**

5         Based on the foregoing, it is HEREBY ORDERED that:

6         1.    Plaintiff's motion for the attendance of inmates William Milton, Byron Myers, and Leo

7               Mepham is granted;

8         2.    Plaintiff's motion for the attendance of inmate Curtis Jackson is denied; and

9         3.    The Court will issue the necessary transportation orders in due course.

10

11   IT IS SO ORDERED.

12   Dated:   **February 3, 2017**

13                                                  UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28